WALTER LEE CHESSER,

        Plaintiff,

    v.                                                  Case No. 24-cv-974-pp

THE MIL CLOTHING COMPANY LLC,

        Defendant.

## ORDER DENYING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 20) AND ORDERING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT

      On August 1, 2024, the plaintiff—who is representing himself—filed a complaint alleging that the defendant is selling clothing that infringes on the plaintiff's "MIL-TOWN" trademark. Dkt. No. 1. On August 2, 2024—the next day—the court received an amended complaint. Dkt. No. 3. On June 9, 2025, the plaintiff asked the clerk to enter default, dkt. no. 17, and the clerk did so that same day. On October 9, 2024—four months later—the defendant filed an answer. Dkt. No. 6. On October 17, 2024, the court received from the plaintiff a motion for default judgment, dkt. no. 9; the next day the court received from him an amended motion for default judgment, dkt. no. 20. A few days later, the court received from the plaintiff a motion asking the court to strike the defendant's answer. Dkt. No. 11. The court granted that motion on May 13, 2025. Dkt. No. 16. It struck the defendant's answer, denied the plaintiff's prior motions for default judgment without prejudice and advised the plaintiff that

1

he'd need to file another request for default and another default judgment motion. Id. at 6-7. A few weeks later, on June 9, 2025, the court received the plaintiff's second request for default. Dkt. No. 17. The clerk entered default the same day. On June 16, 2025, the court received the plaintiff's second amended motion for default judgment, dkt. no. 20, and a supporting brief, dkt. no. 21. The defendant has not responded.

I.   **Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

On October 4, 2024, the plaintiff filed a proof of service asserting that on September 18, 2024, a process server from Cream City Process had served the defendant's registered agent, Branden Boyd, with the summons and amended complaint.[1] Dkt. No. 5. A few days later, on October 9, 2024, the court received a document titled "The Defendant's Answer to the Complaint," but although the first page identified the defendant as "The MIL Clothing Company LLC," the second page does not list the name of the person who signed the document; it appears that there are two hand-written, capital letter "Ds" followed by the

---

[1] The Wisconsin Department of Financial Institutions website shows that Branden Boyd is the registered agent for The Mil Clothing Company LLC. https://apps.dfi.wi.gov/apps/corpSearch (search term "The Mil Clothing Company").

2

date. Dkt. No. 6. The document does not identify the officers, directors or owners of the defendant. Id. It does not identify an attorney representing the defendant, and no attorney has filed a notice of appearance on the defendant's behalf.

The plaintiff asked the court to strike the answer, arguing that because the defendant is a limited liability company, it cannot represent itself in court. Dkt. No. 11 at 1. The plaintiff also argued that the answer was not accompanied by proof of service and that the answer had not been formally served upon him in compliance with the federal rules. Id. at 2. As noted above, on May 13, 2025, the court granted the motion to strike because federal law requires that a corporation—including a limited liability corporation like the defendant—cannot appear or litigate in federal court except through licensed counsel. Dkt. No. 16.

As the court has stated, the plaintiff served the defendant through its registered agent. Service on a registered agent is a proper form of service on a limited liability company. See Fed. R. Civ. P. 4(h)(1)(B) (allowing service on a registered agent). The plaintiff served with the summons and complaint well within the ninety-day period set by Fed. R. Civ. P. 4(m). The defendant's deadline to respond to the complaint was twenty-one days after the October 9, 2024 service date—that is, by Wednesday, October 30, 2024. Although on October 9, 2024, someone timely filed a document styled as an answer, that document was not filed by a lawyer and, even though the court's May 13, 2025 order striking the improper answer advised that a limited liability corporation

must be represented by a lawyer, no attorney has filed an appearance on behalf of the defendant., As of the date of this order—five months after the court struck the improper answer—there is no proper answer on file. The clerk's June 9, 2025 entry of default was proper.

## II. Plaintiff's Second Amended Motion for Default Judgment (Dkt. No. 20)

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Such proceedings are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

The amended complaint alleges that the plaintiff is the owner of the MIL-TOWN trademark, which "covers a wide range of clothing products[,] including but not limited to shirts, t-shirts, caps, hats, and pants." Dkt. No. 3 at ¶1. The plaintiff alleges that he has "continuously and substantially exclusively used" the trademark to print and sell clothing in the United States since 2008. Id. at ¶2. He avers that the defendant has been improperly using the plaintiff's trademark to sell clothing—including shirts, t-shirts and caps—since 2019. Id. at ¶4. According to the plaintiff, the defendant sells clothing under the trademarks "THE MIL®" and "MIL®," which he alleges constitutes trademark infringement under 15 U.S.C. §1114. Id. at ¶5. The plaintiff also alleges that the defendant is using the federal registration symbol ® without a valid trademark. Id. at ¶6. The plaintiff alleges that the defendant's activities constitute false advertising and unfair competition under 15 U.S.C. §1125(a). Id. at ¶7. Neither his motion for default judgment nor his supporting brief cite to substantive law in support of these claims. See Dkt. Nos. 20, 21.

The plaintiff's claims for trademark infringement and unfair competition both require that his "MIL-TOWN" mark be validly registered and that the defendant's use of "THE MIL" and "MIL" be likely to cause confusion between the two marks among consumers. Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 419 (7th Cir. 2019). The amended complaint alleges that the plaintiff's MIL-TOWN trademark is validly registered under Registration No. 3,532,049. Dkt. No. 3 at ¶1. At the default judgment stage, the court must accept this

allegation as true, so the remaining issue is whether the defendant's use of "THE MIL" and "MIL" are likely to cause consumer confusion.

When determining whether the defendant's use of a mark is likely to cause confusion among consumers, the court asks "whether consumers who might use either product would likely attribute them to a single source." Uncommon, 926 F.3d at 425. This requires the court to consider seven factors: "(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." Id. Although no one factor is dispositive, usually "the similarity of the marks, the defendant's intent, and actual confusion" are the most important. Id. (quoting Packman v. Chi. Tribune Co., 267 F.3d 628, 643 (7th Cir. 2001)).

Starting with the first factor, "marks are troublingly similar if a consumer viewing one party's mark would likely associate the product with the other party's product." Id. at 425–26 (citing AutoZone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir. 2008); Nike, Inc. v. "Just Did It" Enters., 6 F.3d 1225, 1228–29 (7th Cir. 1993)). The plaintiff has not provided the court with images of his mark,[2] so the court cannot assess the similarity of the marks. The plaintiff has

---

[2] Whoever filed the now-stricken answer attached exhibits that contain photos of people wearing caps and shirts with a stylized "Mil" image on them. Dkt. No. 6-1 at 1-2. The last page of the exhibits purports to show the plaintiff's logo and the defendant's logo and asserts that they are different. Id. at 4. But it is the *plaintiff's* burden to demonstrate that the marks are similar and likely to cause confusion, and the court has not way of knowing whether the mark attached to the answer is the plaintiff's mark.

not explained whether both marks use the same letters, the same fonts, the same colors, the same style graphics or other typographical elements. The fact that a word is shared between the marks is not enough to establish customer confusion. See AutoZone, 543 F.3d at 930–31 (explaining that a mark's similarity must be determined by viewing the mark in its entirety). Based on the allegations in the complaint, the first element weighs against a grant of default judgment.

The amended complaint alleges that the plaintiff and the defendant both use the marks on clothing, so the similarity of the products weighs in favor of the plaintiff. The area and manner of concurrent use is not clear; the plaintiff alleges that the defendant conducts online sales of the clothing with the MIL marks, while the plaintiff has used the MIL-TOWN mark to print and sell clothing in the United States. Construing the allegations very liberally, the complaint establishes that both parties use the marks to sell products to the same customers in a similar area. See Uncommon, 926 F.3d at 426 (weak inference of similar area and manner of use when both parties sold products nationwide through online retailers).

But there is not enough information in the complaint for the court to assess the other factors. There is no information about the care customers take when purchasing the products, no information about the relative strength of the plaintiff's mark and no evidence of actual customer confusion or the defendant's intent. Because most of the factors in the analysis weigh against the grant of default judgment, the plaintiff has not established that customers

7

likely will be confused by the defendant's use of the "MIL" or "THE MIL" marks. The court will not grant default judgment for the plaintiff on the trademark infringement or unfair competition claims.

The plaintiff also alleges that both the use of the "THE MIL®" and "MIL®" marks and the "misuse of the ® symbol" constitute false advertising. To state a claim for false advertising under the Lanham Act, a plaintiff must establish:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999) (citing B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir. 1999)). The only "false statement of fact" the plaintiff identifies is that the defendant allegedly uses the ® symbol on products without holding a valid trademark.[3] At least one district court has found that unauthorized use of ® "could perhaps form the basis for making a literally false statement" in a false advertising claim, S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc., 829 F. Supp. 2d 437, 453 (E.D. La. 2011), so the court will consider that to be a false statement for the purposes of argument. The court could infer that the defendant caused this

---

[3] Attached to the now-stricken answer is a document purporting to be from the State of Wisconsin Department of Financial Institutions, showing that on August 23, 2022, "The Mil Clothing Company" filed a statement of adoption of the trademark "MIL" with a registration number of 20220088585. Dkt. No. 6-1 at 3.

literally false statement to enter interstate commerce by selling its products online. But the plaintiff has provided no information nor made any argument about the other prongs of the analysis. The complaint does not allege that the use of the ® symbol actually deceived the public or influenced the purchasing decisions of any members of the public. The complaint does not allege that the defendant's use of the ® symbol injured or is likely to injure the plaintiff. In his motion for default judgment, the plaintiff cited no authority that a false advertising claim can be established solely due to the unauthorized use of the ® symbol, nor could the court find any such authority. The court will not grant default judgment for the plaintiff on the false advertising claim.

Even accepting all the allegations in the amended complaint as true, the amended complaint does not state a claim and is legally insufficient to support a default judgment. For this reason, the court must dismiss the plaintiff's amended complaint, but it will do so "without prejudice." That means that the plaintiff may, if he chooses to, file a second amended complaint by the deadline the court will set below. If the plaintiff decides to amend his complaint, there are several things he should keep in mind. An amended complaint takes the place of, or "supersedes," the original complaint. <u>Flannery v. Recording Indus. Ass'n of Am.</u>, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The plaintiff must include in the second amended complaint all the facts supporting his claims; he may not refer the court back to any of his earlier complaints.

Along with this order, the court is sending the plaintiff a blank amended complaint form. The plaintiff must use this form in preparing his second

9

amended complaint. The plaintiff must write the word "Second" above amended complaint at the top of the page. He must put the case number for this case—Case No. 24-cv-974—in the space provided for a case number. The plaintiff should use the spaces on pages 3 and 4 to recite the facts of his claims; if that is not enough space, he may use up to three additional, double-spaced pages. He should attach images of his mark and the allegedly infringing marks so the court can assess their similarity. Again, the second amended complaint must be complete in itself. It may not refer the court back to allegations in the prior complaints or motions.

If the plaintiff elects to file a second amended complaint, he must file it in time for the court to receive it by the deadline the court sets below. If the court receives a second amended complaint by that deadline, the court will screen it to determine whether it states a claim for relief. Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status."). If the plaintiff timely files a second amended complaint, he *should not* serve it on the defendant. He should wait for the court to screen the second amended complaint. If the court concludes at screening that the second amended complaint states a claim, the court then will order the plaintiff to serve the second amended complaint on the defendant. If the court does not receive a second amended complaint by the set deadline, the court will dismiss this case with prejudice and without further notice or hearing.

### III. Conclusion

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 20.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file a second amended complaint in time for the court to *receive it* by the end of the day on **November 14, 2025**. If the court does not receive a second amended complaint by the end of the day on November 14, 2025, the court will dismiss this case based on the amended complaint's failure to state a claim upon which relief can be granted.

Dated in Milwaukee, Wisconsin this 15th day of October, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**