UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WALTER LEE CHESSER,

        Plaintiff,

  v.

        Case No. 24-cv-974-pp

THE MIL CLOTHING COMPANY LLC,

        Defendant.

**ORDER SCREENING SECOND AMENDED COMPLAINT**

On November 14, 2025, the plaintiff—who is representing himself—filed a second amended complaint alleging that the defendant is selling clothing that infringes on the plaintiff's "MIL-TOWN" trademark. Dkt. No. 24. This order screens the second amended complaint and orders the plaintiff to serve the defendant under Federal Rule of Civil Procedure 4.

**I.    Background**

The plaintiff filed his original complaint on August 1, 2024, dkt. no. 1, and the next day, the court received from him an amended complaint, dkt. no. 3. The defendant did not timely appear or answer the amended complaint. On June 9, 2025, the plaintiff asked the clerk to enter default, dkt. no. 17, and the clerk did so that same day. On October 9, 2024—four months later—the defendant filed an answer. Dkt. No. 6. No attorney entered an appearance on behalf of the defendant. On October 17, 2024, the court received from the plaintiff a motion for default judgment, dkt. no. 9; the next day the court

1

received from him an amended motion for default judgment, dkt. no. 10. A few days later, the court received from the plaintiff a motion asking the court to strike the defendant's answer and renewing his motions for default judgment. Dkt. No. 11.

On May 13, 2025, the court granted the motion to strike, finding that the defendant—a limited liability company—could not represent itself in federal court, so its answer was not valid because it had not been signed by an attorney who had appeared in the case. Dkt. No. 16 at 4–5. The court also denied without prejudice the plaintiff's motions for default judgment and advised the plaintiff that before filing a default judgment motion, he'd first need to file a request for entry of default against the defendant. Id. at 6–7. A few weeks later, on June 9, 2025, the court received the plaintiff's request for entry of default. Dkt. No. 17. The clerk entered default the same day. On June 16, 2025, the court received the plaintiff's second amended motion for default judgment, dkt. no. 20, and a supporting brief, dkt. no. 21. The defendant has not ever filed a response to the default judgment motion.

On October 15, 2025, the court issued an order denying without prejudice the plaintiff's motion for default judgment. Dkt. No. 23. The court found that the amended complaint lacked sufficient facts to state a claim for trademark infringement, unfair competition or false advertising. Id. at 7–9. The court determined that even accepting all the allegations in the amended complaint as true, the amended complaint was legally insufficient to support a default judgment. Id. at 9. The court gave the plaintiff permission to file a

2

second amended complaint to try to state a claim for relief. Id. at 9–10. The court stated that if the plaintiff filed a second amended complaint in time for the court to receive it by the end of the day on November 14, 2025, the court would screen it to determine if it stated a claim for relief. Id. at 10.

On November 14, 2025, the court received from the plaintiff a second amended complaint. Dkt. No. 24. This order screens that complaint.

## II. Screening the Second Amended Complaint

### A. Legal Standard

The court must "screen" the second amended complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

3

662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B. The Second Amended Complaint

The second amended complaint alleges that the plaintiff owns the "MIL-TOWN" trademark, registered with the United States Patent and Trademark Office (USPTO) as Registration No. 3,532,049, for use on clothing. Dkt. No. 24 at 2. The plaintiff alleges that the mark is registered as a "Type 4 – Standard Character Mark, meaning that protection extends to the word itself—regardless of font, color, or style." Id. (citing In re Viterra Inc., 671 F.3d 1358, 1363–64 (Fed. Cir. 2012)). The plaintiff alleges that the mark's registration was renewed on May 15, 2019 for an additional ten-year term. Id. The plaintiff alleges that the valid registration of the MIL-TOWN mark is "conclusive evidence" of his exclusive right to use the mark on the listed goods (clothing). Id. at 3 (citing Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198 (1985)). The plaintiff alleges that he uses the mark in commerce by selling clothing online using the mark. Id. The plaintiff attached several screenshots of products he purportedly sells using the MIL-TOWN mark. Dkt. No. 24-1 at 4–5.

The plaintiff alleges that the defendant infringed on his trademark by using confusingly similar marks to sell identical goods, creating a likelihood of customer confusion. Dkt. No. 24 at 3. The plaintiff alleges that the defendant

4

sold clothing and hats using the marks "THE MIL" and "MIL," which he argues copy the "dominant portion" of his MIL-TOWN mark. Id. The plaintiff alleges that because both he and the defendant sell identical kinds of apparel, the likelihood of customer confusion is significantly higher. Id. (citing AutoZone v. Strick, 543 F.3d 923, 930 (7th Cir. 2008)). The plaintiff attached several screenshots of the defendant's products and website purportedly showing the use of the infringing marks. Dkt. No. 24-1 at 7–10.

The plaintiff alleges that the defendant began selling the infringing items in 2019. Dkt. No. 24 at 4. He asserts that he served the defendant with cease-and-desist letters on April 17 and May 10, 2023, but that the defendant did not respond or stop the alleged infringement. Id. The plaintiff argues that this constitutes willful infringement on and disregard of the plaintiff's trademark rights. Id. (citing BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1095 (7th Cir. 1994)).

The plaintiff alleges that the defendant sells the infringing products at its Milwaukee, Wisconsin storefront and online to customers throughout the United States. Id. The plaintiff alleges that a Google search for the MIL-TOWN mark brings up the defendant's website, which he argues "show[s] direct marketplace overlap." Id. He alleges that both companies target "Milwaukee-pride consumers," another area of overlapping use. Id.

The plaintiff alleges that the defendant adopted the MIL mark to "trade on the reputation, goodwill, and customer recognition of the plaintiff's established 'MIL-TOWN' brand which represents Milwaukee-origin clothing." Id.

5

at 4–5. He alleges that the hyphen in the MIL-TOWN mark "deliberately isolates and emphasizes the prefix 'MIL,' making it the dominant and distinctive portion of the mark that consumers associate directly with the plaintiff's brand identity and geographic origin." Id. at 5. He alleges that "MIL" and "THE MIL" are not registered to the defendant in the USPTO database. Id.

Under the "relief wanted" section of the complaint, the plaintiff states that he seeks a declaration that the defendant's use of THE MIL and MIL marks infringe upon the plaintiff's MIL-TOWN mark in violation of the Lanham Act. Id. at 6. He also seeks a permanent injunction preventing the defendant from using MIL, THE MIL or any other marks that are confusingly similar to the plaintiff's MIL-TOWN mark. Id. The plaintiff seeks statutory damages under the Lanham Act for the infringement. Id. at 7. The plaintiff further seeks a declaration that the defendant's use of the registered-trademark symbol ® on its unregistered marks constitutes false advertising and false designation of origin in violation of 15 U.S.C. §1125(a); he asks the court to award corrective advertising and disgorgement damages to the plaintiff for the sales obtained through the deceptive use of the ® symbol. Id.

    C.    <u>Analysis</u>

To state a claim for trademark infringement under the Lanham Act, the plaintiff must establish that his MIL-TOWN mark is validly registered and that the defendant's use of MIL and/or THE MIL is "likely to cause confusion among consumers." <u>Uncommon, LLC v. Spigen, Inc.</u>, 926 F.3d 409, 419 (7th Cir. 2019) (citing <u>H-D Mich., Inc. v. Top Quality Serv., Inc.</u>, 496 F.3d 755, 759 (7th

Cir. 2007); Packman v. Chi. Tribune Co., 267 F.3d 628, 638 & n.8 (7th Cir. 2001)). A mark's registration with the USPTO is *prima facie* evidence of validity. Id. (citing 15. U.S.C. §§1057(b), 1115(a)). The plaintiff alleges that his MIL-TOWN mark currently is registered with the USPTO under Registration No. 3,532,049. At this stage, that is sufficient to plead that the plaintiff holds a validly registered mark. See Lynn Scott, LLC v. Grubhub Inc., No. 20 C 6334, 2024 WL 3673718, at *3 (N.D. Ill. Aug. 6, 2024) (challenges to the validity of a trademark's registration should not be resolved at the pleading stage).

Next, "[t]o decide if there is a likelihood of confusion, [courts] ask whether consumers who might use either product would likely attribute them to a single source." Uncommon, 926 F.3d at 425 (citing Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 455 (7th Cir. 2011)). The Seventh Circuit considers the following seven factors:

> (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to "palm off" its product as that of another.

Id. (citing Sorensen v. WD-40 Co., 792 F.3d 712, 726 (7th Cir. 2015)). While "[n]o one factor is dispositive . . . 'the similarity of the marks, the defendant's intent, and actual confusion' are most important." Id. (quoting Packman, 267 F.3d at 643). At the pleading stage, "the plaintiff only needs to allege facts that could, after drawing reasonable inferences in plaintiff's favor, plausibly support the likelihood-of-confusion element." Slep-Tone Ent. Corp. v. Sellis Enters.,

Inc., 87 F. Supp. 3d 897, 907 (N.D. Ill. 2015) (internal quotations and citations omitted).

The first factor considers the similarity of the marks themselves. The court asks "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." AutoZone, 543 F.3d at 929–30 (quotation omitted). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed, or was otherwise affiliated with the product." Id. at 930 (citation and internal quotation marks omitted).

The plaintiff's mark is a standard character mark, meaning that it "is not limited to any particular font, size, style, or color." In re Viterra, 671 F.3d at 1363. At least one court in this circuit considering standard character marks has found that two clothing brands that share a single, unique word in their brand names may be confusingly similar. See Easton v. Primal Wear, Inc., Case No. 17-CV-06081, 2019 WL 1430985, at *6 (N.D. Ill. Mar. 29, 2019) (marks "PRIMAL MODE" and "PRIMAL/PRIMAL WEAR" were "more similar than they are different"). This is because if "one word of a trademark is the salient portion of the mark, 'it may be given greater weight than the surrounding elements'" when determining the similarity of the marks. Id. (quoting Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997)); see also Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 899 (7th Cir. 2001) ("Beanie" was the more distinctive word in plaintiff's "Beanie Baby" mark and carried greater

8

weight than the surrounding elements, so defendant's "Beanie Racers" mark was confusingly similar). Because the plaintiff's mark is a standard character mark and the defendant includes the distinctive portion "MIL" in its allegedly infringing marks, the complaint sufficiently pleads that the marks are similar.

The second factor considers the similarity of the products at issue rather than the marks themselves. "Closely related products are those that would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 679 (7th Cir. 2001). The complaint alleges that the plaintiff and the defendant sell identical clothing products, including shirts and hats. It is plausible that consumers might think the shirts and hats sold by the defendant come from the same source as the shirts and hats sold by the plaintiff.

The third factor looks to the area and manner of concurrent use. Courts consider "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties" or "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." Sorensen, 792 F.3d at 730. The complaint alleges that the plaintiff and defendant both sell their products online and target "Milwaukee-pride consumers" throughout the United States and this judicial district. The complaint sufficiently establishes that the plaintiff and defendant use the same channel of commerce (online retail sales) to target the same consumers in Milwaukee and across the United States.

9

As to the degree of care consumers use, "courts considering this factor assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." Sorensen, 792 F.3d at 730 (internal quotations and alterations omitted). Although the complaint contains no allegations directly addressing this factor, the attached screenshots of the plaintiff's and defendant's products show that the products range in price from around $25 to $60 and thus are relatively inexpensive. See Dkt. No. 24-1 at 4–9. The average consumer is not likely to exercise a great deal of care when purchasing everyday clothing and accessories at this price point. See H-D U.S.A., LLC v. SunFrog, LLC, 311 F. Supp. 3d 1000, 1034–35 (E.D. Wis. 2018). At this stage, the complaint and attached exhibits establish that the target consumers likely use a low degree of care when purchasing the products.

The fifth factor considers the strength of the plaintiff's mark. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." CAE, 267 F.3d at 684. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." AutoZone, 543 F.3d at 933. "A mark's strength ordinarily corresponds to its economic and marketing strength." Sorensen, 792 F.3d at 731 (citing AutoZone, 543 F.3d at 933). The complaint contains no allegations regarding the strength or distinctiveness of the MIL-TOWN mark. In fact, the complaint alleges that the

defendant's website appears first in an online search for MIL-TOWN. That suggests that the plaintiff's mark is relatively weak.

The sixth factor considers whether there is actual customer confusion. The complaint does not contain any allegations addressing this element. "Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis . . . this evidence is not required to prove that a likelihood of confusion exists." CAE, 267 F.3d at 685. The lack of allegations of actual confusion is not fatal to the plaintiff's claim.

The final factor considers the defendant's intent. The plaintiff alleges that he sent the defendant two cease-and-desist letters informing the defendant of his mark and his belief that the defendant's products infringed upon that mark. He alleges that the defendant never responded and that the defendant continues to sell the allegedly infringing products. That is sufficient at this stage to establish the defendant's intent to infringe on the plaintiff's mark. See Lynn Scott, 2024 WL 3673718 at *7 (defendant's knowing use of plaintiff's mark demonstrated intent to infringe).

Because most of the seven factors weigh in favor of the plaintiff, the court concludes that the plaintiff has sufficiently pled that there is a likelihood of confusion between his MIL-TOWN mark and the defendant's MIL and THE MIL marks. The second amended complaint states a claim for trademark infringement.

The second amended complaint also raises claims for false advertising and false designation of origin based on the defendant's alleged misuse of the

11

registered trademark symbol ® on its unregistered marks. The court previously considered this claim in its order denying the plaintiff's second motion for default judgment. Dkt. No. 23 at 8–9. The court stated then that the plaintiff had not established that he suffered any damages traceable to the defendant's alleged improper use of the ® symbol and had not provided any authority that a false advertising claim can be established solely due to the unauthorized use of the ® symbol. Id. at 9. The second amended complaint does not cure these deficiencies. The second amended complaint contains no allegations that the plaintiff himself suffered any harm due to the defendant's alleged improper use of the ® symbol. The court remains unaware of any authority that would allow the plaintiff to bring such a claim absent any damages he has suffered due to the misuse of the ® symbol. The court will dismiss the false advertising and false designation of origin claims.

### III. Service

The court previously determined that the plaintiff had served the summons and complaint on the defendant. See Dkt. No. 23 at 2–3. The defendant failed to respond after proper service, so the clerk's entry of default was proper. Id. at 4. Federal Rule of Civil Procedure 5(a)(2) states that "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." "In other words, a party seeking to amend its complaint to add a new claim against a party in default must serve the

amended pleading along with summons on the defaulted party." In re Kutrubis, 550 F. App'x 306, 309 (7th Cir. 2013).

The prior complaint raised a trademark infringement claim against the defendant based on the same facts and circumstances alleged in the second amended complaint. The Seventh Circuit has not addressed whether re-pleading the same claim in an amended complaint after the first complaint was dismissed constitutes a "new claim" compelling personal service on the party in default. In an abundance of caution, the court will order the plaintiff to serve the summons, the second amended complaint and a copy of this order on the defendant in accordance with Federal Rule of Civil Procedure 4. The plaintiff must serve the defendant by the date set below and must file proof of service with the court. If counsel for the defendant does not appear and answer within the time set by the Federal Rules of Civil Procedure, the plaintiff may request entry of default against the defendant and may move for default judgment.

**IV. Conclusion**

The court **ORDERS** that the plaintiff's claims for false advertising and false designation of origin are **DISMISSED WITH PREJUDICE**.

The court **ORDERS** that the plaintiff must serve the defendant with a summons, the second amended complaint and a copy of this order in the manner required by Federal Rule of Civil Procedure 4. The plaintiff must complete service on the defendant and file proof of service with the court by the end of the day on **March 31, 2026**. Counsel for the defendant must appear and answer the complaint within the time set by the Federal Rules of Civil

13

Case 2:24-cv-00974-PP   Filed 01/27/26   Page 13 of 14   Document 25

Procedure. If the defendant fails to appear, the plaintiff may request entry of default and file a new motion for default judgment.

Dated in Milwaukee, Wisconsin this 27th day of January, 2026.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**